BRUNEAU, a/k/a Barbara Joshua, Plaintiff in error, v. STATE, Defendant in error.†

*No. 75–876–CR. Argued January 4, 1977.—Decided April 19, 1977.* (Also reported in 252 N. W. 2d 347.)

† Motion for rehearing denied, without costs, on June 14, 1977.

For the plaintiff in error the cause was argued by *Jack E. Schairer,* assistant state public defender, with whom on the briefs was *Howard B. Eisenberg,* state public defender.

For the defendant in error the cause was argued by *David J. Becker,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

HEFFERNAN, J. After a plea of guilty, the defendant, Barbara Bruneau, was found guilty of burglary and arson. The court sentenced her to a seven-year indeterminate term for burglary and a ten-year indeterminate term for arson. These sentences were ordered to be served consecutively and consecutive to a manslaughter sentence of eight and one-half years which was imposed three days earlier in another branch of the circuit court for Milwaukee county.

It is the principal contention of Bruneau and the State Public Defender, her counsel on this appeal, that

it was beyond the sentencing authority of the circuit court to order that the seven-year term for burglary and the ten-year term for arson be consecutive to the earlier imposed manslaughter term, because Bruneau had not yet commenced serving the term for manslaughter. We agree with that contention and conclude that it was beyond the statutory authority of the circuit judge to make the burglary and arson terms consecutive to the manslaughter sentence.

We, accordingly, modify the sentence of the circuit court to provide that the ten-year term for arson is to be served consecutively to the seven-year term for burglary and that such terms are to be concurrent with the earlier imposed eight-and-one-half-year sentence for manslaughter. As so modified, the sentence of the circuit court is affirmed.

It is also argued that the sentencing proceedings in the circuit court denied the defendant due process and also constituted an abuse of discretion because the sentences were excessive. We conclude that this argument is without merit and decline to set aside or modify the sentences imposed except as set forth above.

The sentencing authority in respect to concurrent or consecutive sentences has been legislatively mandated by sec. 973.15(1), Stats. That portion of the statute provides:

"973.15 Sentence, terms, escapes, (1) All sentences to the Wisconsin state prisons shall be for one year or more. Except as otherwise provided in this section, all sentences commence at noon on the day of sentence, but time which elapses after sentence while the defendant is in the county jail or is at large on bail shall not be computed as any part of the term of imprisonment. The court may impose as many sentences as there are convictions and may provide that any such sentence be concurrent or that it shall commence at the expiration of any other sentence; and if the defendant is then serving

a sentence, the present sentence may provide that it shall commence at the expiration of the previous sentence. If a convict escapes, the time during which he is unlawfully absent from the prison after such escape shall not be computed as part of his term. Courts may impose sentences to be served in whole or in part concurrently with a sentence being served in a federal institution or an institution of another state."

We have on numerous occasions pointed out that this section of the statutes is self-contradictory and makes almost impossible a rational sentencing procedure. In *Drinkwater v. State,* 69 Wis.2d 60, 230 N.W.2d 126 (1975), decided in June of 1975, we pointed out that the statute, as it now stands, prohibits the imposition of a consecutive sentence under some circumstances where it might well be in the public interest for a judge to impose such sentence. We stated at 75–6:

"To not permit such sentence when there has been a subsequent felony substantially diminishes the deterrent effect of the sentencing procedure. Remedial action is, however, for the legislature. It is beyond the statutory power of a court in the situations considered here to impose a consecutive sentence even though such sentence is in the public interest."

A similar problem in respect to sec. 973.15(1), Stats., was addressed by this court in *Guyton v. State,* 69 Wis.2d 663, 230 N.W.2d 726 (1975). We said therein, at 667:

"Where a defendant has committed three serious crimes—in this case, sexual intercourse with a child in violation of sec. 944.10(1) and (2), Stats.—is placed on parole, and subsequently commits another serious crime, there is no good reason why, in the exercise of proper judicial discretion, a sentence consecutive to the period to be served for the earlier crimes should not be imposed. The statutes, however, make such action by the sentencing judge impossible."

In *Guyton,* also, we invited the legislature's attention to the anomaly of the statute which makes consecutive sentencing beyond the legislative authorization in some situations where the public interest would no doubt be served thereby.

In *Klimas v. State,* 75 Wis.2d 244, 249 N.W.2d 285 (1977), we again expressed concern with sec. 973.15(1), Stats., because of the failure of that statute to permit crediting of confinement time prior to incarceration at the institution where the sentence would be served. We stated in *Klimas,* at 250, "[I]t is apparent that we enter a field in which the legislature ought to act . . . ."

In the instant case we are again confronted with the problems that arise under sec. 973.15(1), Stats. The problem here is substantially that which was discussed at length in *Drinkwater, supra,* and *Guyton, supra.* In the instant case, Barbara Bruneau had been sentenced to an eight-and-one-half year term for manslaughter by Judge Michael Barron in the circuit court for Milwaukee county. Before she was confined at Taycheedah—and therefore prior to the time that she was "then serving a sentence" (sec. 973.15(1))—Judge Seraphim in another branch of the circuit court, three days later, imposed the sentences for burglary and for arson.

It is conceded by the state that, under the rationale of *Guyton* and *Drinkwater,* because she had not commenced serving the sentence for manslaughter, the new sentences could not be imposed consecutively to that manslaughter charge. Under sec. 973.15(1), Stats., therefore, Judge Seraphim's sentences could only be concurrent with the earlier imposed manslaughter sentence.

His authority to make the seven-year sentence for burglary and the ten-year sentence for arson consecutive was not impaired, because sec. 973.15(1) specifically provides:

"The court may impose as many sentences as there are convictions and may provide that any such sentence be concurrent or that it shall commence at the expiration of any other sentence . . . ."

The state does not dispute this rationale and specifically concedes that the discussion in *Drinkwater-Guyton* is controlling. The Attorney General in his brief states:

"The present defendant, like Guyton, was, at the time the consecutive sentences were imposed, 'not in a status in which [she] was accumulating time for the discharge of the earlier imposed sentence.' Consequently, she was not 'then serving a sentence.' As with *Guyton,* therefore, the imposition of a consecutive sentence upon her was improper."

While conceding the application of the *Drinkwater* and *Guyton* rationale, the Attorney General seeks to make a distinction on the facts. He contends that nothing in the record shows that Bruneau was not in fact serving her sentence and, since it had been imposed three days earlier, presumptively the service of that sentence commenced, and, therefore, sentences consecutive to that earlier sentence could be imposed. We are satisfied that the record leads to the contrary factual conclusion.

At the sentencing, Bruneau's trial attorney stated, in response to a question from the judge, that she had "been sitting" in the county jail. The evidence of record is quite clear that, following the imposition of the manslaughter sentence, Bruneau had not been transported to Taycheedah for the service of that sentence. We are, accordingly, obliged to modify the sentence imposed by Judge Seraphim on September 18, 1975, by striking from it the provisions that would compel Barbara Bruneau to serve the consecutive sentences for burglary and arson consecutively to the earlier imposed sentence for manslaughter, which latter sentence she had not commenced serving.

Both the Public Defender, representing Bruneau, and the Attorney General place heavy emphasis upon the fact that, at the time of Bruneau's conviction, time in confinement prior to the date a defendant enters prison was not to be counted as time served. The question, however, of whether time in confinement in the county jail was to be credited toward the satisfaction of a sentence imposed was not material to the rationale of either *Drinkwater* or *Guyton*. Rather, they hinged upon the legislature's mandate that the service of the sentence commenced on the date of the entry into prison.

Accordingly, the rationale of *Klimas, supra,* does not in any way vitiate the rationale of *Drinkwater* or *Guyton*. Under *Klimas,* the legislatively imposed commencement of a term of imprisonment starts, consistently with *Drinkwater-Guyton,* on the date on which a prisoner is received at the institution, but such prisoner, to the extent that he has been incarcerated theretofore because of *indigency,* is entitled to a credit toward the satisfaction of his term of imprisonment, which term commences only when he is received at the institution. A prisoner is not "serving a sentence" under the terms of sec. 973.15 (1), Stats., during the periods for which *Klimas* mandates credit.

It should also be emphasized that the *Klimas* credit is mandated, as a matter of equal protection, only for such periods during which a prisoner would have been at liberty were it not for financial inability to post bail. Hence, *Klimas* is doubly inapplicable to the instant case. There is not even a shadow of suggestion that Barbara Bruneau, even though wealthy, would have been released on bail in the interim between the manslaughter conviction and the burglary and arson convictions. *Klimas* does not in any way alter the legislatively decreed time at which a sentence is commenced to be served. It pro-

vides only for an arithmetical credit applicable after a sentence is commenced to be served.

It should be added, moreover, that *Klimas,* by its terms, was applicable only to sentences imposed after its mandate, January 18, 1977.[1]

The state also argues that the defendant's position herein presages future serious equal-protection problems. It argues that the defendant's position, if adopted, means that one convicted of a felony and promptly sent to prison would have commenced serving a sentence, and hence such convicted person could be returned for the imposition of a consecutive sentence, but a prisoner who was held in county jail following the initial sentence could not have a consecutive sentence imposed even though the time period were the same. The speed with which the convicted prisoner was transported to the prison would control whether or not a subsequent sentence could be made consecutive. The state's position is at least arguable and poses still another constitutional difficulty in respect to sec. 973.15(1), Stats., the statute under consideration. The state in the instant case, moreover, has no standing to raise this issue in respect to other convicted prisoners. We believe, however, that the state's argument in this respect demonstrates that the legislature should move promptly to correct sec. 973.15(1). Its infirmities were made known as long ago as 1967 in *Gaertner v. State,* 35 Wis.2d 159, 150 N.W.2d 370 (1967); and it was demonstrated in *Drinkwater* and *Guyton* that the statute, by limiting judicial power to impose sentences, set no rational guidelines for the imposition of consecutive sentences. We urge the legislature to promptly address itself to this problem.

---

[1] See *Johnson v. Prast* and *Smith v. Gray,* 548 F.2d 699 (7th Cir. 1977).

In addition, the defendant argues that the trial judge denied the defendant a due-process sentencing hearing and also abused his discretion because the sentences imposed were excessive. While the question of excessiveness is ameliorated somewhat by the modification of sentences we mandate herein, we nevertheless address ourselves to defendant's basic argument.

It appears to be the defendant's position that, because no presentence investigation report was utilized by the court, the court, in order to satisfy due process at sentencing, was required to make a detailed inquiry in respect to the defendant's social history. We have frequently stated, however, that a court is not obliged to order and use a presentence investigation report.

In *Weatherall v. State,* 73 Wis.2d 22, 242 N.W.2d 220 (1976), this court pointed out that sec. 972.15(1), Stats., only provides that a court "may" order a presentence investigation. It is not required to order one. Nevertheless, we urge and encourage trial courts to use such presentence investigation reports. *See, Sprang v. State,* 63 Wis.2d 679, 218 N.W.2d 304 (1974). But such reports are not constitutionally required, and the legislature has not mandated the use of such reports. *Krebs v. State,* 64 Wis.2d 407, 421, 219 N.W.2d 355 (1974); *Langston v. State,* 61 Wis.2d 288, 295–96, 212 N.W.2d 113 (1973); *Byas v. State,* 55 Wis.2d 125, 128–29, 197 N.W.2d 757 (1972).

The federal cases indicate that a defendant's due-process rights at a sentencing hearing are three in number: (1) To be present at the hearing and to be afforded the right of allocution,[2] (2) to be represented by coun-

---

[2] By Federal Rules of Criminal Procedure Rule 32, the court must address defendant and ask if he has anything to say about mitigation of punishment. *United States v. Murphy,* 530 F.2d 1 (4th Cir. 1976); *Green v. United States,* 365 U.S. 301 (1961).

sel,[3] and (3) to be sentenced on the basis of true and correct information.[4]

As a matter of due process, Barbara Bruneau was afforded each of these rights. She was present with counsel, who was given the opportunity to address the court in respect to any mitigating factors. The defendant herself was addressed by the court and given the opportunity of allocution. Although the right of due process, as the Defender contends, is somewhat different than the requirement that a judge exercise appropriate discretion in the imposition of sentence, the factors concerned in each tend to merge. As the footnote citation to the third requirement of due process set forth above demonstrates, the factor of due process that requires a judge to sentence only on the basis of true and correct information is similar to the requirements of *McCleary v. State,* 49 Wis.2d 263, 182 N.W.2d 512 (1971), which requires that a trial judge articulate the basis for the sentence imposed on the facts of record. The holding of *McCleary* was summarized thus:

---

[3] *Gutierrez v. Estelle,* 474 F.2d 899 (5th Cir. 1973); *Davis v. Estelle,* 529 F.2d 437 (5th Cir. 1976); *United States v. Burkley,* 511 F.2d 47 (4th Cir. 1975); *United States v. Lucas,* 513 F.2d 509 (D.C. Cir. 1975); *Ganz v. Bensinger,* 480 F.2d 88 (7th Cir. 1973).

[4] It was suggested in Note, "Procedural Due Process at Judicial Sentencing for Felony," 81 Harv. L. Rev. 821 (1968), that, as a matter of due process, a defendant should have not only the right to be present and to counsel but to a sentence based upon intelligent principles and factual data. However, the author finds those rights adequately protected where a sentencing judge is required to articulate the factors he considered:

"Unless the sentencing judge is required to make explicit findings of fact or at least to incorporate into the record those parts of the report on which he relies, neither society nor the defendant can be confident that the entire procedure of adducing evidence for sentencing was not a wasteful ceremony without influence on the actual sentence." (at 846)

". . . there must be evidence that discretion was in fact exercised. Discretion is not synonymous with decision-making. Rather, the term contemplates a process of reasoning. This process must depend on facts that are of record or that are reasonably derived by inference from the record and a conclusion based on a logical rationale founded upon proper legal standards. As we pointed out in *State v. Hutnik* (1968), 39 Wis.2d 754, 764, 159 N.W.2d 733, '. . . there should be evidence in the record that discretion was in fact exercised and the basis of that exercise of discretion should be set forth.' " (at 277)

We are satisfied that the trial court properly met the standards of *McCleary*. The judge reviewed the defendant's extensive record, including parole and probation violations. He noted that, although the arson and burglary might have arisen from a love triangle, the altercation was hardly a family affair and constituted a significant danger to society. The judge stated that to impose concurrent sentences would substantially reduce the deterrent effect of the sentences. The trial judge extensively reviewed Barbara Bruneau's record and pointed out that it consisted of separate charges of theft by fraud, forgery, resisting a police officer, battery, disorderly conduct, obstructing an officer, forgery, burglary, theft, parole violations, fraudulent use of a credit card, forgery, criminal damage to property, and manslaughter, and the current charges of burglary and arson. He pointed out that she had nine felony convictions on her record. He concluded that she was a danger to the community.

In *Ocanas v. State*, 70 Wis.2d 179, 187, 233 N.W.2d 457 (1975), the court, in summary of the *McCleary* standards, stated that an abuse of sentencing discretion might be found under the following circumstances:

"(1) Failure to state on the record the relevant and material factors which influenced the court's decision; (2) reliance upon factors which are totally irrelevant or

immaterial to the type of decision to be made; and (3) too much weight given to one factor on the face of other contravening considerations."

We find no such abuse of discretion in the instant case. We are satisfied that the factors utilized by the court were relevant and material. We see no evidence that improper weight was given to any factor or that irrelevant or extraneous matters were considered in derogation of those that were pertinent to the sentencing procedure. The trial judge's only error was an error of law and not of discretion. He erred because he could not impose sentences that were consecutive to the man-slaughter term imposed by Judge Barron which the defendant had not commenced serving. That error we correct as a matter of law.

It would appear that, under the circumstances, the sentences which we affirm—consecutive sentences on the counts of burglary and arson (to be served concurrently with the earlier imposed eight-and-one-half-year term for manslaughter)—do not constitute an abuse of discretion.

*By the Court.*—Judgment and order modified consistent with this opinion and, as modified, judgment and order affirmed.