The opinion of the court was delivered by FISHER, P.J.A.D.
*606 N.J.S.A. 2C:44-3(a) permits imposition of an extended prison term when the defendant was convicted of at least two separate prior crimes but only if "the latest" of those crimes was committed or the defendant's "last release from confinement" occurred-"whichever is later"-within ten years of the charged crime. Because the last of defendant's prior crimes was committed in Florida ten years and three weeks before the crime charged here, and because defendant was not "confined"-he was sentenced in Florida to a probationary term and being on probation is not the same as being "confined"-we reverse and remand for further proceedings.
I
The record before us reveals that defendant pleaded guilty in a Florida court in May 2004, to committing a crime that occurred on July 26, 2003, and he was sentenced to a three-year probationary term in October 2004. In the matter before us, defendant pleaded guilty in August 2016 to third-degree child-endangerment[1] that *607 occurred on August 17-18, 2013. Finding that both his most recent prior crime and his release from confinement fell within the ten years that preceded August 17-18, 2013, the judge sentenced defendant in May 2017 as a persistent offender to an eight-year extended prison term, subject to a four-year period of parole ineligibility, pursuant to N.J.S.A. 2C:44-3(a).
Defendant appeals, arguing[2] in a single point that he was not "eligible to be sentenced to an extended term as a persistent offender because he neither committed a crime nor was released from confinement imposed for conviction of a crime in the ten years preceding the instant offense."
II
Defendant's argument requires our consideration of the particular language employed by the Legislature in authorizing judges to impose extended prison terms on defendants found to be persistent offenders.
*922 The sentencing judge's interpretation is not entitled to deference; our review is de novo. State v. Grate, 220 N.J. 317, 329, 106 A.3d 466 (2015). When a statute's language is "clear and unambiguous on its face," we enforce its plain meaning; if, however, the statute's words "admit[ ] to more than one reasonable interpretation," we consider external sources in attempting to "ascertain the Legislature's intent." State v. Reiner, 180 N.J. 307, 311, 850 A.2d 1252 (2004) ; see also Grate, 220 N.J. at 330, 106 A.3d 466. We also remain mindful that an ambiguous criminal statute must be interpreted in the defendant's favor. State v. Valentin, 105 N.J. 14, 17-18, 519 A.2d 322 (1987) ; see also State v. Morrison, 227 N.J. 295, 314, 151 A.3d 561 (2016).
*608 The sentencing judge's interpretation of N.J.S.A. 2C:44-3(a) was erroneous for two reasons: (a) in determining whether the last prior crime occurred more or less than ten years earlier than the crime for which defendant was sentenced, the judge interpreted "crime" as "conviction"; and (b) the judge mistakenly viewed the Florida probationary term imposed for that last prior crime as the equivalent of "confinement." We reject these interpretations and, consequently, reverse and remand for resentencing.
A
One avenue prescribed by N.J.S.A. 2C:44-3(a) for finding a defendant to be a persistent offender and eligible for an extended term is that the crime in question must have occurred within ten years of "the latest in time" of defendant's prior "crimes." As noted above, the crime charged here occurred on August 17-18, 2013; defendant's last prior crime was committed on July 26, 2003, slightly more than ten years earlier. If the date of the crime controls-as the Legislature clearly stated-then this aspect of N.J.S.A. 2C:44-3(a) does not support the State's position that the judge correctly imposed an extended term. Stated another way, if by referring to the prior "crime" the Legislature actually meant the prior "conviction," the State and the trial judge would be correct. That construction however, to quote Justice Holmes, isn't "interpretation but perversion." Five Per Cent Discount Cases, 243 U.S. 97, 106, 37 S.Ct. 346, 61 L.Ed. 617 (1917).
The statute's plain language is unambiguous and requires no interpretation. A "crime" occurs on the date or dates the accused acted in a manner proscribed by a criminal statute. A "conviction" happens when an accused is legally determined to have committed a crime or offense[3] ; in short, a "conviction" occurs when the criminal adjudication occurs. By phrasing the statute as *609 it did, the Legislature must be assumed to have meant what it said; the date of the "crime" and not the date of the "conviction" is the relevant event for this aspect of the persistent-offender statute. We need not burden this opinion further with a recitation of interpretation canons to conclude that the date to which the judge was required to examine the application of N.J.S.A. 2C:44-3(a) was the July 26, 2003 Florida crime, not the May 13, 2004 Florida conviction. With the former date being more than ten years before the crimes charged here, the judge could not utilize this avenue as the path to applying the persistent-offender statute.
B
The judge also erred in finding defendant to be a persistent offender based *923 on his conclusion that the probationary term imposed in Florida on defendant in May 2004 constituted "confinement" and that defendant's later release from that purported "confinement" was within ten years of the crime charged here. Being on probation is not the same as being "confine[d]" within the meaning of N.J.S.A. 2C:44-3(a).
We recognize that the Legislature did not define the word "confinement," thus generating potential uncertainty about its scope when the State seeks a persistent-offender extended term. Despite the fact that the Legislature did not explain what it meant by "confinement," or, as in some states, express the effect of a probationary term on a persistent-offender statute, we are to give the word "confinement" its "generally accepted meaning." N.J.S.A. 1:1-1. That generally accepted meaning requires that the confined individual be "imprisoned or restrained," Black's Law Dictionary 362 (10th ed. 2014), "deprive[d] ... of ... liberty," Ballentine's Law Dictionary 244 (3d ed. 1969), or "place[d] in prison or jail," ibid. While we adhere to the concept that judges, when interpreting statutes, should not "make a fortress out of the dictionary," Cabell v. Markham, 148 F.2d 737, 739 (2d Cir.) (L. Hand, J.), aff'd, 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945) ; see also Lance v. McGreevey, 180 N.J. 590, 598, 853 A.2d 856 (2004), the context and *610 the statute's underlying purpose strongly suggest that the Legislature did not intend that an individual on probation would be considered "confined." The Legislature undoubtedly meant that "confinement" would not occur unless the defendant had been deprived of his freedom by governmental authorities.
The reason for this interpretation seems obvious. The statute was intended to create the judicial discretion to impose an extended term on an individual incapable of living a law-abiding life for a significant period of time. Our Legislature fixed that period of time at ten years, thus conveying that an individual who is capable of residing in our communities for more than ten years without committing a crime should not be treated as a persistent offender. The portion of the statute that views that ten-year period as commencing from the individual's release from "confinement" simply deprives that individual of the ability to illogically argue a preceding ten-year crime-free life when that individual was only able to remain crime-free because of imprisonment. An individual on probation, while living with some limitations, is out in society and remains capable of committing a crime. Remaining crime free during the preceding ten years-even when serving a probationary term during part or all of that ten years-demonstrates that individual's ability to lead the ten-year crime-free life anticipated by our Legislature when enacting N.J.S.A. 2C:44-3(a).[4]
Persistent-offender statutes serve to deter individuals with criminal histories from further criminal behavior by giving *611 notice that they may be subject *924 to extended prison terms for subsequent crimes. See State v. Hawks, 114 N.J. 359, 365, 554 A.2d 1330 (1989) ; State v. Dunbar, 108 N.J. 80, 90-91, 527 A.2d 1346 (1987). Although nearly all states have such laws, there are few similar to ours.[5] Wisconsin utilizes the phrase "actual confinement"[6] and defines that phrase as connoting a time when an individual is "off the streets and no longer able to wreak further criminal havoc against the community." State v. Price, 231 Wis.2d 229, 604 N.W.2d 898, 901 (Wis. Ct. App. 1999). That notion comports with our view of our own persistent-offender statute. An individual serving a probationary term is not "off the streets" and, thus, should be entitled to take advantage of the time that passes while on probation prior to the crime for which he or she is later charged. In short, we reject the State's argument and the sentencing judge's interpretation; we hold that an individual serving a probationary term cannot be considered to be confined[7] within the meaning of N.J.S.A. 2C:44-3(a). *612 III
Were that all that was before us, we would simply reverse and remand for resentencing without application of N.J.S.A. 2C:44-3(a). We are further mindful, however, of facts suggested to us by the parties since the appeal was filed that may impact on the analysis set forth in Section II above.
That is, the State has argued and provided some evidence to us to suggest defendant was briefly detained in Florida in 2006 for allegedly violating a condition of his probationary term. We do not know the nature of the violation. And it appears that whatever occurred resulted in the continuation of defendant's probationary term. The parties dispute whether this circumstance resulted in a "confinement" within the meaning of N.J.S.A. 2C:44-3(a), and whether that circumstance justifies the sentencing judge's imposition of an extended term.
We choose not to consider this alleged circumstance or how it might be viewed *925 when considering the application of N.J.S.A. 2C:44-3(a). These facts were not presented to the sentencing judge,[8] they have not been adequately developed for anyone's consideration, and even, as of now, remain uncertain. We will not speculate on the significance of these undeveloped circumstances. We instead leave these matters for further development and consideration, if necessary, in the trial court. *613 For further guidance, we make the following observations. Probation can be violated either by a conviction for a subsequent offense or for failure to adhere to a substantial requirement imposed as a condition of the probation; moreover, the subsequent consequences of violating probation are considered part of the corrections process, not a separate prosecution and conviction. See N.J.S.A. 2C:43-7 ; State v. Parker, 216 N.J. 408, 419, 82 A.3d 926 (2014). We are satisfied that the persistent-offender statute applies to confinement for criminal behavior, not the mere incident of an individual being held briefly in custody. Consequently, if the State persists in seeking an extended term, the judge should be provided with evidence as to the cause for defendant's detention in 2006 and whether its consideration as "confinement" comports with the underlying purpose of N.J.S.A. 2C:44-3(a).
Reversed and remanded for proceedings in conformity with this opinion. We do not retain jurisdiction.

N.J.S.A. 2C:24-4(a)(1).

The matter was originally placed on an excessive sentencing oral argument calendar. After hearing argument on December 5, 2017, we ordered that the parties brief the issues, and we heard argument again after their briefs were filed.

A "crime" is to be distinguished from an "offense," which includes crimes, disorderly persons offenses, and petty disorderly persons offenses. N.J.S.A. 2C:1-14(k). The persistent offender statute applies only to crimes and not all offenses.

We recognize that the statute's legislative history is not instructive. In 1971, the New Jersey Criminal Law Revision Commission recommended a statute containing age and prior convictions requirements; there was no recommendation for the use of "confinement" nor language limiting the scope of the latest relevant crime. N.J. Criminal Law Revision Comm'n, 1 Tentative Draft 154 (1971). The statute was officially enacted in 1978; it defined the relevant time factor as "within 10 years of the date of the current offense," but did not include the "release from confinement" language. L. 1978, c. 95. The statute was amended a year later to include "release from confinement," L. 1979, c. 178 § 95, but without expressing why the word "confinement" was used or how its scope should be understood.

Only one state, Maine, does not have an analogous statute. The majority of states-thirty-seven-do not limit the relevant previous convictions based on some specified time period. Of the remaining twelve states, eleven explicitly state the date the time frame begins and delineate whether the excluded period includes probation, parole, or other forms of supervised release; only one, Wisconsin, uses the term "confinement," Wis. Stat. § 939.62(2) (LEXIS through 2017-18 Sess.).

Two states, Missouri and Washington, comprehensively define "confinement" within their criminal codes. See Mo. Rev. Stat. § 556.061(13) (LEXIS through 2018 Sess.) (defining a person as "in confinement" if they are "held in a place of confinement pursuant to arrest or order of a court," excluding "probation or parole, temporary or otherwise"); Wash. Rev. Code Ann. § 9.94A.030(8), (36), and (52) (LexisNexis, LEXIS through 2017 Sess.) (which includes definitions for "total or partial confinement" and "total confinement" in ways that are consistent with our view that one is confined when kept "inside the physical boundaries of a [governmental] facility or institution").

As we have observed, our Criminal Code does not explicitly define "confinement" as it should be used in this context. The Legislature has, however, employed the word elsewhere. For example, the Sex Offenders Act, N.J.S.A. 2C:47-1 to -10, repeatedly refers to "confinement" in describing periods of incarceration or placement in treatment centers. See also N.J.S.A. 2C:7-2.1(a) (using "confinement" in the context of Megan's Law registration requirements); N.J.S.A. 2C:35-14(g) (discussing a period of incarceration for probation violations, subject to advice of treatment providers "with respect to the likelihood that such confinement" would assist in the progress of treatment); N.J.S.A. 2C:35-5.7(j) (discussing continuing compliance with buffer zone orders after "release from confinement or incarceration on parole" for controlled substances offenses).

The parties advise that this alleged probation violation was referred to in the presentence report, but the judge made no mention of it when defendant was sentenced.